**FILED**
August 1, 2022
KAREN MITCHELL
CLERK, U.S. DISTRICT COURT
bb

N THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| MARIA DELCARMEN CHRISTENSEN, § § Plaintiff, § § § CIVIL ACTION NO. 4:21-CV-648-P v. § § COMMISSIONER, SOCIAL § SECURITY ADMINISTRATION, § Defendant. | |

**FINDINGS, CONCLUSIONS AND
OF THE UNITED STATES MAGISTRATE JUDGE
AND
NOTICE AND ORDER**

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation of the United States Magistrate are as follows:

**FINDINGS AND CONCLUSIONS**

**I. STATEMENT OF THE CASE**

Plaintiff Maria Delcarmen Christensen ("Christensen") filed this action pursuant to Section 405(g) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of Social Security denying her claim for disability insurance benefits ("DIB") under Title II of the Social Security Act ("SSA"). In March 2019, Christensen proactively applied for DIB, alleging that her disability began on January 1, 2015. (Transcript ("Tr.") 10; *see* Tr. 174-80.) Christensen's application was denied both initially and on reconsideration. (Tr. 10; *see* Tr. 72-95, 100-07.) Christensen then requested a hearing before an administrative law judge ("ALJ"). (Tr. 10; *see* Tr. 108-18.) On July 22, 2020, the ALJ held a hearing, and, on September 30, 2020,

the ALJ found that Christensen was not disabled within the meaning of the SSA. (Tr. 7-23, 33-59.) Christensen then filed a request for review of the ALJ's decision to the Appeals Council. (Tr. 170-73.) On March 13, 2021, the Appeals Council denied Christensen's request, leaving the ALJ's decision to stand as the final decision of the Commissioner. (Tr. 1-4.)

## II. STANDARD OF REVIEW

Disability insurance is governed by Title II, 42 U.S.C. § 404 *et seq.*, and numerous regulatory provisions. *See* 20 C.F.R. Pt. 404. The SSA defines "disability" as a "medically determinable physical or mental impairment" lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. §§ 423(d)(1), 1382c(a)(3)(A).

To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. § 404.1520(a)(4). First, the claimant must not be presently working at any substantial gainful activity. *Id.* §§ 404.1520(a)(4)(i), (b). "Substantial gainful activity" is defined as work activity involving the use of significant physical or mental abilities for pay or profit. *See id.* § 404.1510. Second, the claimant must have an impairment or combination of impairments that is severe. *Id.* §§ 404.1520(a)(4)(ii), (c); *see also Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). Third, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"). 20 C.F.R. Pt. 404 Subpt. P, App. 1; 20 C.F.R. §§ 404.1520(a)(4)(iii), (d).[1] Fourth, if disability cannot be found based on the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to

---

[1] Before moving from the third to the fourth step of the inquiry, the Commissioner assesses the claimant's residual functional capacity ("RFC") to determine the most the claimant is able to do notwithstanding her physical and mental limitations. 20 C.F.R. §§ 404.1520(a)(4), (e). The claimant's RFC is used at both the fourth and fifth steps of the five-step analysis. *Id.* § 404.1520(a)(4). At Step Four, the claimant's RFC is used to determine if the claimant can still do her past relevant work. *Id.* § 404.1520(a)(4)(iv). At Step Five, the claimant's RFC is used to determine whether the claimant can adjust to other types of work. *Id.* § 404.1520(a)(4)(v).

2

her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), (f). Fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity ("RFC"), age, education, and past work experiences. *Id.* §§ 404.1520(a)(4)(v), (g); *Crowley v. Apfel*, 197 F.3d 194, 197–98 (5th Cir. 1999). At steps one through four, the burden of proof rests upon the claimant to show she is disabled. *Crowley*, 197 F.3d at 198. If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of her existing impairments. *Id.* If the Commissioner meets his burden, it is up to the claimant to then show that she cannot perform the alternate work. *See Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards, and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988) (per curiam). Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if *no* credible evidentiary choices or medical findings support the decision. *Id.* (emphasis added). An ALJ's decision is not subject to reversal, even if there is substantial evidence in the record that would have supported the opposite conclusion, so long as substantial evidence supports the conclusion that was reached by the ALJ. *Dollis v. Astrue*, No. 4:08-CV-00503-A, 2009 WL 1542466, at *5 (N.D. Tex. Jun. 2, 2009). This Court may neither reweigh the evidence in the record, nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if substantial evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383.

## III. ISSUES

In her brief, Christensen presents the following issues:

1. Whether the ALJ erred at Step Four in finding that Christensen could return to her past work as an administrative assistant and administrative/executive secretary as these jobs did not last long enough to qualify as past relevant work; and

2. Whether substantial evidence supports the ALJ's implicit refusal to grant a closed period of disability for the time period prior to Christensen's low back surgery.

(Plaintiff's Brief ("Pl.'s Br.") at 7-15.)

## IV. ALJ DECISION

In a decision dated September 30, 2020, the ALJ concluded that Christensen was not disabled within the meaning of the SSA.[2] (Tr. 10-23.) At Step One, the ALJ found that Christensen had not engaged in substantial gainful activity since her alleged onset date of January 1, 2015 through her date last insured of March 31, 2017. (Tr. 13.) At Step Two, the ALJ found that Christensen had the following severe impairments: "degenerative changes of the lumbar spine and cervical spine status post[-]surgery, bilateral carpal tunnel syndrome, fibromyalgia, hypertension, and sleep apnea related insomnia." (Tr. 13.) Next, at Step Three, the ALJ determined that Christensen did not have an impairment or combination of impairments that met or was medically equivalent to the severity of one of the listed impairments in the Listing. (Tr. 14-15.) As to Christensen's RFC, the ALJ stated:

> After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR [§] 404.1567(a) except the claimant can never climb ladders, ropes, or scaffolds, and occasionally climb[ ] ramps, stairs, balance, stoop,

---

[2] The ALJ also noted that Christensen had filed a previous application on October 15, 2016, that was denied initially. (Tr. 10; see Tr. 60-71.) Christensen never appealed this denial. (Pl.'s Br. at 2.) The ALJ, after considering the regulatory criteria for reopening and that the "claimant's representative raised a compelling argument that there was material evidence that was not considered in the prior determination," found that reopening of the prior application was "appropriate in this instance for assessing the proposed relevant period from the alleged onset date until the date last insured." (Tr. 11.)

kneel, crouch, and crawl. She can frequently reach, handle, and fingers [sic] with the bilateral upper extremities.

(Tr. 15.)

At Step Four, the ALJ found that Christensen was capable of performing her past relevant work as an administrative assistant and an executive assistant. (Tr. 22.) Accordingly, the ALJ found that Christensen was not disabled from January 1, 2015 through March 31, 2017, the date last insured. (Tr. 22.)

## V. DISCUSSION

### A. Past Relevant Work

In her brief, Christensen argues that the ALJ erred at Step Four in finding that Christensen could return to work as an administrative assistant and administrative/executive secretary because these past jobs failed to meet the definition of past relevant work. (Pl.'s Br. at 7-11.) Specifically, Christensen states:

> Here, Christensen's employment as an administrative assistant and administrative secretary were performed within the last fifteen years and at times qualified as SGA (elements one and two [of the definition of past relevant work]). They did not, however, last long enough to be vocationally relevant.
>
> . . . .
>
> . . . Christensen's work for Children's Medical Center as an administrative secretary did not satisfy the durational requirement to qualify as past relevant work. Because the job carried an SVP of eight, it required "over 4 years" of employment to sufficiently learn how to perform the job. Yet Christensen's detailed earnings record reflects just over three years of earnings for the employer—2003, 2004, 2005, and part of 2006. And although Christensen reported working for Children's as far back as 1999, her earnings record only goes back to 2003. There is no evidence in the record confirming that, prior to 2003, the work was performed at an SGA level. And even if the pre-2003 earnings exceeded SGA, they would nevertheless violate the 15-year cutoff required for past relevant work. So Christensen's employment [as] an administrative secretary/executive assistant cannot qualify as past relevant work.

5

> Similarly, Christensen's work as an administrative assistant lasted only 19 or 20 months—short of the "over two years" of employment required by an SVP of seven. Christensen reportedly started at Smith Temporaries in May 2010 and ended in December of 2011. This corresponds with the $11,248.00 in earning reported in 2010 and the $25,509.31 in earnings reported in 2011. And while she also earned $412.00 for the employer in 2012, this was likely a carryover from her employment in 2011. The $412.00 is far below the SGA monthly threshold for 2012, and it certainly does not suggest she continued the job through May of that year. The ALJ's step-four determination is therefore contrary to law and fact. . . .

(Pl.'s Br. at 7-9 (internal citations and footnotes omitted).)

Plaintiff argues that this error is not harmless because, if the ALJ had "properly eliminated Christensen's work as an administrative assistant and administrative secretary, the analysis would have proceeded to step five." (Pl.'s Br. at 11.) Plaintiff claims that, at Step Five, the ALJ would have had to find Christensen disabled based on Medical-Vocational Guidelines ("GRID Rules"), specifically GRID Rule 201.14. (Pls.' Br. at 11.)

In this case, as set forth above, the ALJ found at Step Four that Christensen was capable of performing her past relevant work as an administrative assistant and an executive assistant. (Tr. 22.) In making this determination, the ALJ stated:

> The vocational expert characterized the claimant's past work as follows: an administrative assistant, Dictionary of Occupational Titles (DOT) 169.167-010, sedentary exertion, Specific Vocational Preparation (SVP) 7, and an executive [secretary], DOT Code 169.167-014, sedentary exertion, SVP 8.
>
> The claimant's work history report indicates she worked as an executive assistant at Cook Children's Hospital. There are reported earnings from this employer above substantial gainful activity as recently as 2012. The claimant also worked for BNSF railroad in 2010. The earnings record indicates her wages, paid through Smith Temporaries Inc., were consistent with SGA in 2010 and 2011.
>
> I find this work was done within the past fifteen years, at a level or constituting substantial gainful activity and long enough to have become competent in the basic required demands.
>
> In comparing the claimant's residual functional capacity with the physical and mental demands of this work, I find that the claimant was able to perform it as

actually and generally performed. This conclusion is supported by the testimony of the vocational expert.

(Tr. 22 (internal citations omitted).)

"The regulations require that a claimant's impairment prevent her from doing her past relevant work if she is to be deemed disabled." *A.K.T. (XXX-XX-XXXX) v. U.S. Com'r Soc. Sec. Admin.*, No. 09-CV-0680, 2010 WL 3035496, at *1 (W.D. La. Aug. 3, 2010). The definition of past relevant work is made up of three parts or requirements: (1) the work must have been performed within the last 15 years ("relevant time period requirement"),[3] (2) the work must have lasted long enough for the person to learn to do it ("duration requirement") and (3) the work must be considered substantial gainful activity ("earnings requirement"). *See Copeland v. Colvin*, 771 F.3d 920, 924 (5th Cir. 2014) (quoting SSR 82-61, 1982 WL 31387, at *1 (S.S.A. 1982)); *see* 20 CFR §§ 404.1560(b)(1), 404.1565(a). Social Security Ruling ("SSR") 82–62 states that, as to the duration requirement, the work experience should have been of adequate duration "for the worker to have learned the techniques, acquired information, and developed the facility needed for average performance in the job situation." SSR 82-62, 1982 WL 31386, at *2 (S.S.A. Jan. 1, 1982). "The length of time for this depends on the nature and complexity of the work." *A.K.T.*, 2010 WL 3035496, at *1.

The regulations state that an ALJ is allowed to use a variety of sources to obtain evidence about a claimant's past relevant work, including a vocational expert ("VE") and the Dictionary of Occupational Titles ("DOT"). *See* 20 C.F.R. § 404.1560(b)(2). The DOT contains a

---

[3] The fifteen-year period is measured from the time of adjudication, or, if the claimant's date last insured has expired, the date claimant was last insured. *See* 20 CFR § 404.1565(a); SSR 82-62, 1982 WL 31387, at *2; *Craven v. Berryhill*, No. 4:18-CV-00008-Y-BP, 2018 WL 4658530, at *4 (N.D. Tex. Sept. 11, 2018), *adopted in*, No. 4:18-CV-008-Y, 2018 WL 4637285 (N.D. Tex. Sept. 27, 2018). Thus, in this case Christensen's date last insured prior to the date of adjudication of her claim, so the 15-year period will be measured from March 31, 2017, her date last insured.

comprehensive list of jobs throughout the United States with detailed descriptions of the requirements of each job. *See Veal v. Soc. Sec. Admin.*, 618 F. Supp. 2d 600, 608-09 (E.D. Tex. 2009). For each job, the DOT sets forth the specific vocational preparation ("SVP"), which refers to the "amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." *DOT*, App. C (rev. 4th ed. 1991); *see Jackson v. Astrue,* No. 4:11-CV-28-Y, 2011 WL 4943547, at *9 n.8 (N.D. Tex. Aug. 23, 2011), *adopted in*, 2011 WL 4940998 (N.D. Tex. Oct. 17, 2011). An SVP of 7, which is required in the administrative assistant position, is defined as "over 2 years and up to and including 4 years." DOT, app. C. An SVP of 8, which is required in the executive assistant position, is defined as "over 4 years up to and including 10 years." *DOT*, App. C.

As set forth above, the ALJ found at Step Four that Christensen was not disabled because she was able to perform her past relevant work as an administrative assistant and executive secretary. Christensen only challenges that she did not meet one part of the three-part definition of past relevant work—the duration requirement. Christensen argues that her work as an administrative assistant and as an executive assistant did not last long enough for her to learn to do it, and, thus, cannot be considered past relevant work. (Pl.'s Br. at 7-10.) Specifically, Christensen claims that, as to the administrative assistant job, she only worked in such capacity at BNSF railroad (paid through Smith Temporaries) for 19 or 20 months and not the required "over two years" for a job that has an SVP of 7. In addition, as to the executive secretary job, Christensen argues that her earnings record reflects just over three years of earnings and not the required "over four years" for a job with an SVP of 8.

8

In this case, it is clear (and not disputed by Christensen) that Christensen worked as an executive assistant/secretary for Cook Children's Hospital from 1999 until 2005 or 2006. (Pl.'s Br. at 3. The ALJ, in making his decision, referenced Christensen's Certified Earnings Query, which detailed Christensen's earnings since 2003. (Tr. 13; *see* Tr. 181-83.) In addition, the ALJ specifically stated that Christensen's "work history report indicates she worked as an executive assistant at Cook Children's Hospital."[4] These work history reports indicate that Christensen worked at the hospital in this capacity from 1999 to 2005 or 2006. (*See, e.g.*, Tr. 210 (unsigned and undated Work History Report that shows Christensen worked at a hospital as an executive assistant from 1999 to 2005), 224 (Work History Report dated April 17, 2017 that shows Christensen worked as an executive assistant at Cook Children's Hospital from 08/1999 to 1/2006), 279 (Work History Report dated April 12, 2019 that shows Christensen worked as an executive assistant at Cook Children's hospital from 08/1999 to 1/2006.).)

In her brief, Christensen is arguing that the ALJ should have disregarded the information indicating that Christensen had met the duration requirement of the definition of past relevant work because some of her work as an executive assistant at the hospital dated back to 1999, which was not performed within the last 15 years prior to March 31, 2017, her date last insured. However, the 15-year requirement of past relevant work relates to the relevant time period requirement and not the duration requirement. Christensen is, in essence, asking the Court to change the definition of past relevant work by combining the duration requirement with the relevant time period

---

[4] While the ALJ did not cite to the specific exhibit numbers where such work history reports were located in the record, it is clear that the ALJ had looked and them and was relying on them in his decision as he specifically mentioned them.

requirement. This, however, is not permitted pursuant to the terms of the SSA's Program Operations Manual System ("POMS").[5]

According to POMS DI 25005.015(C), "[i]f the claimant performed work that had a continuity of skills, knowledge, and work processes with another job, consider that work when determining if the claimant did the work long enough to learn it, even if the work was outside the relevant period." 2011 WL 4753471 (2022). *See also* SSR 82-62, 1982 WL 31386, at *2. The POMS sets forth the following example:

> The claimant worked from 01/02/88 to 12/20/99 as a machinist. Beginning 12/21/99, he became a lead machinist. He did this job until 02/01/01. The adjudication date for his claim was 01/01/15, at which time the claimant's machinist job was no longer relevant. However, his lead machinist job was still in the relevant period. Although a little over one year may not have been long enough to learn the job of lead machinist, there was a continuity of skills from the claimant's previous work such that he may have done his lead machinist work long enough to have learned the job.

POMS DI 25005.015(C).

Applying this example to the present case, Christensen worked as an executive assistant at the hospital from 1999 to at least 2005. Christensen's date of last insured was 03/31/2017, at which time any job prior to 03/31/2002 was no longer relevant. However, Christensen's job as an executive assistant from 2003 to 2005 was still in the relevant period. Although two years may not have been long enough to satisfy the SVP of 8 duration requirement of an executive assistant, which requires at least four years, there is a continuity of skills from Christensen's work as an executive assistant from 1999 to 2003 to have learned the job.[6] Thus, the ALJ did not err in finding

---

[5] "POMS are not binding on the Commissioner, but they may be viewed as binding on an ALJ in a case that falls squarely within one of the provisions." *Bettery v. Comm'r of Soc. Sec.*, No. 14-03321, 2015 WL 4742296, at *8 n.9 (W.D. La. Aug. 10, 2015). In addition, "a court defers to POMS provisions unless it determines that they are arbitrary, capricious, or contrary to law. *Taylor v. Saul*, No. 4:18-cv-00765-O-BP, 2019 WL 4667515, at *4 (N.D. Tex. Sept. 25, 2019).

[6] While the Court is not convinced that Christensen did not also meet the duration requirement of her position as an administrative assistant based solely on her work as an office assistant for Mr. Handyman (paid through "Armis

10

at Step Four that Christensen could perform her past relevant work as an executive assistant, and remand is not required.

### B. Closed Period of Disability

In her brief, Christensen also argues that substantial evidence does not support the ALJ's implicit refusal to grant a closed period of disability for the time period prior to Christensen's low back surgery. (Pl.'s Br. at 11-15.) In support, Christensen states:

> While the ALJ technically found Christensen not disabled "at any time" from her alleged onset date through her date last insured, substantial evidence does not support the implicit finding that Christensen was not entitled to a closed period of disability. At a minimum, the ALJ should have explored the possibility of granting a period of disability from Christensen's alleged onset date of January 1, 2015 to April 22, 2016—the date of her corrective back surgery.
>
> . . . .
>
> . . . In 2015, Christensen, who had previously undergone back surgery, experienced recurrence of her lower back pain, which she consistently rated as a ten out of ten. She sought out pain management and epidural steroid injection, neither of which were effective. Her physicians took radiographs of the lumbar spine, which indicated severe degenerative disc disease and a clear nonunion at the L4-L5 level. So on April 22, 2016, Christensen underwent removal of the L4-L5 spinal instrumentation with facet resections and spinal fusion at L3, L4, L5, and S1.
>
> By most accounts Christensen's April 22, 2016 surgery appeared relatively successful. Treatment notes the following month indicated Christensen was doing well and was pleased with her progress, reporting adequate pain control. She even reported she was now walking more often and that her pain had dropped to only four out of ten—a significant improvement from before.
>
> The ALJ's written decision, in fact, attests to the stark contrast between Christensen's pre- and post-surgical condition. . . . Clearly, the decision itself suggests Christensen's condition after surgery was wholly unlike her condition before surgery. And yet, despite this contrast, the decision posits a single RFC reflecting the same set of limitations before and after the procedure.

---

Enterprises, Inc."), Christensen argues that the Court cannot consider such employment because the ALJ's decision only references Christensen's work with BNSF railroad (which was paid through Smith Temporaries Inc. and only lasted approximately 18 or 19 months). (Pl.'s Br. 7 n.6, 8.) The Court need not decide this issue, however, because there was at least one job, executive assistant, that the ALJ could rely on in making his decision at Step Four. *See, e.g., Gaspard v. Soc. Sec. Admin. Comm'r*, 609 F. Supp. 2d 607, 617 (E.D. Tex. Apr. 8, 2009) ("The Commissioner's burden at Step 5 of the sequential evaluation process . . . is satisfied by showing the existence of only *one* job with a significant number of available positions that the claimant can perform.")

>    Commissioner's one-size-fits all RFC would have arguably been harmless if it reflected Christensen's more limited condition prior to surgery. Yet the decision suggests the opposite—it claims Christensen is not disabled because her "low back pain improved following her lumbar surgery in April 2016." In fact, while the decision doubts any limitations in standing and walking—which is arguably true *after* the 2016 surgery—the pre-surgical records indicated Christensen struggled to get out of bed and walk to the kitchen. . . . In short, the reasoning presented in the written decision makes a compelling case for why Christensen was not disabled *after* surgery; but the prospect of a closed period before the surgery remains an open question.
>
>    So while a closed-period determination is not required in every case, it was required here. Both the evidence and the ALJ's account of that evidence suggests Christensen's condition was far different prior to her April 22, 2016 surgery, yet the RFC fails to reflect that difference. Accordingly, reversal and remand are required. . . .

(Pl.'s Br. at 11, 13-15 (internal citations omitted).)

The SSA states that a claimant is disabled and entitled to benefits if the individual is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382(a)(3)(A). "In a typical disability case, an application for benefits is decided while the claimant is under a continuing disability." *Dounley v. Comm'r of Soc. Sec. Admin.*, No. 3:08-CV-1388-O (BH), 2009 WL 2208021, at *8 (N.D. Tex. July 22, 2009). "In a closed period case, the decision-maker determines that a new applicant for disability benefits was disabled for a finite period of time which started and stopped prior to the date of his decision." *Dounley*, 2009 WL 2208021, at *8 (internal quotations omitted). "It is particularly necessary for the ALJ to consider whether a closed period of disability existed where the record shows that plaintiff's condition has improved significantly over time as the result of a discrete event, such as surgery." *Sandra Lee M. v. Comm'r of Soc. Sec.*, 541 F. Supp. 3d 277, 283 (W.D.N.Y. May 24, 2021) (internal citations omitted). Plaintiff has the burden to show that

he was disabled tor a continuous period of twelve months prior to the significant improvement. *See Charles v. Saul*, No. 20-1424, 2021 WL 1092664, at *7 (E.D. La. Mar. 5, 2021) ("Plaintiff has the burden to show that he was disabled for a continuous period of 12 months on or before the date that the disability determination was made.")

Based on the foregoing, the issue is whether remand is necessary for the ALJ to explore the possibility of a closed period of disability benefits from January 1, 2015, Christensen's alleged onset date, to April 22, 2016, the date Christensen underwent "removal of L4-L5 hardware and an anterior lumbar instrumentation and fusion from L3 to S1 with facet resections and laminectomies at the L3-S1." (Tr. 19.) According to the evidence cited to by Christensen, treatment records show that, starting on approximately June 23, 2015, Christensen was suffering from an increase in severe back pain and needed lumbar surgery. (Pl.'s Br. at 13; *see* Tr. 368-72; *see also* Tr. 18 (referring to Exhibit 1F/2-5.) The evidence further shows that, once Christensen had the back surgery on April 22, 2016, she went through a period of improvement until around August 2017, which was after the date she last met the insured status requirements of the SSA. (Tr. 19.) In addition, the record indicates that the ALJ made his RFC determination based heavily on medical opinion evidence that evaluated Christensen's records relating to her back issues starting in or around November 2016, which was after she had the back surgery. (*See, e.g.*, Tr. 63, 67, 75-76, 90-91.)

While the Court is not convinced that this evidence leads to a conclusion that the ALJ erred in failing to consider whether Christensen was disabled for a closed period prior to her surgery, for Christensen to even be eligible for a closed period of disability, there must be evidence that Christensen was unable to engage in any substantial gainful activity because of an impairment or combination or impairments for a continuous period of not less than twelve months. After

reviewing the medical evidence cited to by the ALJ in his decision as well as the evidence pointed to by Christensen in support of her argument, this evidence shows that Christensen was suffering from a *medically documented* increase in severe back pain beginning around June 23, 2015. (*See, e.g.,* Tr. 18-19, 368-72, 388, 561).[7] Because Christensen does not point to any evidence that she was suffering from this increase in severe back pain for at least twelve months prior to her surgery in April 2016 and the corresponding significant improvement, the ALJ did not err in failing to consider a closed period of disability. Consequently, remand is not required as to this issue.

## RECOMMENDATION

It is recommended that the Commissioner's decision be **AFFIRMED**.

## NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a de novo determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendations to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions

---

[7] It is not the Court's duty to scour the record for evidence supporting Christensen's arguments beyond the evidence pointed to by Christensen. *See Perrodin v. Comm'r of Soc. Sec. Admin.*, No. 6:21-cv-02584, 2022 WL 1207403, at *4 (W.D. La. Apr. 1, 2022) (stating that it is "not the court's responsibility to scour the record looking for evidence to support a party's arguments"); *Arlington Apart. Invs. v. Allied World Assurance Co. (U.S.), Inc.*, No. 4:12-CV-061-Y, 2014 WL 12580459, at *2 (N.D. Tex. 2014) ("This Court is not like a 'pig[ ], hunting for truffles buried in . . . an appendix.").

accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).

## ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **August 15, 2022** to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED August 1, 2022.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

JLC/knv